

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-18-1996

# Kreschollek v. So Stevedoring Co

Precedential or Non-Precedential:

Docket 95-5253

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

## Recommended Citation

"Kreschollek v. So Stevedoring Co" (1996). *1996 Decisions*. Paper 219.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/219

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 95-5253


CARL KRESCHOLLEK,
                              Appellant

v.

SOUTHERN STEVEDORING COMPANY;
LUMBERMEN'S MUTUAL CASUALTY CO.;
ROBERT REICH, SECRETARY OF LABOR, and
R. DAVID LOTZ, REGIONAL DIRECTOR, REGION III,
OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 93-cv-03903)


Argued December 4, 1995

Before: SLOVITER, Chief Judge,
STAPLETON and SAROKIN, Circuit Judges


(Opinion Filed March 18, 1996)

David M. Linker (Argued)
Freedman & Lorry
Philadelphia, PA  19106

        Attorney for Appellant Carl Kreschollek

David R. Kunz
Post & Schell
Philadelphia, PA  19103

        Attorney for Appellees Southern Stevedoring Co.
        and Lumbermen's Mutual Casualty Co.

1

Steven J. Mandel
Allen H. Feldman
Deborah Greenfield  (Argued)
United States Department of Labor
Washington, D.C.  20210

> Attorneys for Appellee Secretary of Labor
> and Regional Director, Offc. of Workers' Compensation
> Programs

OPINION OF THE COURT

SLOVITER, <u>Chief Judge</u>.

Carl Kreschollek appeals from the district court's order dismissing for lack of subject matter jurisdiction his complaint interposing a facial challenge to the constitutionality of section 14 of the Longshore and Harbor Workers' Compensation Act (Longshore Act or Act).  The district court so ruled after concluding that Kreschollek's claim could be raised in his pending administrative proceeding and thereafter on review in this court.  Although we have previously held that the administrative review scheme provided in the Longshore Act supplants district court jurisdiction over claims for benefits, Kreschollek's claim presents a new twist on the question because his challenge to the Longshore Act is a constitutional one and he claims that the review process established by the Act is insufficient to address his injuries.

**I.**

Kreschollek suffered a work-related injury on or about March 20, 1990 while employed as a longshoreman by Southern Stevedoring Co. Southern did not controvert its liability for benefits, and in late June of that same year it undertook voluntary compensation for Kreschollek's disability pursuant to 33 U.S.C. § 914(b). It continued such payments until October 29, 1992. Thereafter, it filed a notice of controversion with the District Director of the Office of Workers' Compensation Programs, asserting that Kreschollek was now able to return to work. Kreschollek contested the termination of compensation and, after an informal conference produced no resolution, the District Director, upon request by Kreschollek, transferred the case with his recommendations to the Department of Labor for a formal hearing before an Administrative Law Judge (ALJ). See 33 U.S.C. § 919(c), (d) (1994); 20 C.F.R. § 702.301 (1995). An ALJ held a hearing on the case on December 15, 1993.

While the matter was pending before the ALJ, Kreschollek filed this action in the United States District Court for the District of New Jersey invoking jurisdiction under 28 U.S.C. § 1331 and alleging that the review procedure under the Act is unconstitutional because it does not require a predeprivation hearing before employers who voluntarily compensated injured employees may terminate those benefits. Kreschollek sought restoration of his benefits, a declaration from the district court that section 14 of the Act, 33 U.S.C. §914, is unconstitutional, an injunction against termination of his benefits without a prior evidentiary hearing, and attorney's

3

fees and costs. Named as defendants were Southern Stevedoring Co.; Robert Reich, Secretary of Labor; R. David Lotz, Regional Director, Region III, Office of Workers' Compensation Programs; and Lumberman Mutual Casualty Co. All defendants moved to dismiss.

The ALJ's final decision on Kreschollek's administrative claim for benefits and the district court's ruling on the motion to dismiss were handed down within days of each other in March 1995. The ALJ denied Kreschollek's request for additional benefits. That ruling, which Kreschollek appealed to the Benefits Review Board, is not before us at this time.

The district court, in the decision that is on appeal to us, granted the motion to dismiss for lack of subject matter jurisdiction, holding that in light of the detailed administrative and judicial review procedure provided by the Act, Kreschollek's constitutional challenge must be raised in the court of appeals after exhaustion of administrative remedies, rather than in the district court through 28 U.S.C. § 1331.

**II.**

**A.**

The sole issue on appeal is whether the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., precludes district court review of Kreschollek's constitutional challenge to the Act. Although Kreschollek concedes that his claim for benefits must be adjudicated through the Act's administrative review procedure, he argues that the district court nonetheless has jurisdiction over his collateral

4

constitutional challenge to the adjudicatory process provided under the Act.

This court previously addressed the more general question of whether the Longshore Act supplants district court jurisdiction over claims challenging the Secretary's interpretation of the Act. Although that case arose in the context of the Black Lung Benefits Act, the Black Lung Benefits Act incorporates the scheme of administrative and judicial review of benefits determinations set forth in the Longshore and Harbor Workers' Compensation Act, see 30 U.S.C. § 932(a) (1994), and decisions thereunder are of obvious applicability.

In Compensation Department of District Five, United Mine Workers of America v. Marshall, 667 F.2d 336 (3d Cir. 1981), the United Mine Workers of America brought an action in federal district court to enjoin the Secretary of Labor from rereading X-rays of claimants seeking benefits pursuant to the Black Lung Benefits Act. The Union contended that the Black Lung Act required the Secretary, ALJ and Benefits Review Board (Board) to accept the x-ray reading made by the claimant's medical expert. The district court dismissed the action for lack of subject matter jurisdiction and this court affirmed, determining that "the scheme of review established by Congress for determinations of black lung disability benefits was intended to be exclusive." Id. at 340.

Several considerations led to our determination. First, we noted the general rule that if "there exists a special statutory review procedure, it is ordinarily supposed that

5

Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." Id. (quoting City of Rochester v. Bond, 603 F.2d 927, 931 (D.C. Cir. 1979)). Moreover, we recognized the "strong presumption against the availability of simultaneous review in both the district court and the court of appeals." Id. (quoting Sun Enterprises, Ltd. v. Train, 532 F.2d 280, 287 (2d Cir. 1976)).

We next considered whether "the statute's legislative history, purpose, and design" suggested that the circumstances of the particular case should overcome the presumption, id., and concluded that they did not. In reaching this conclusion, we considered the following: 1) the Benefits Review Board was created to provide uniformity in application of the Act and to prevent duplication of review; 2) the Act was amended in 1972 in part to oust the district courts from jurisdiction over benefits claims; 3) Congress's provision for review of Board determinations in the court of appeals reflected its intention to require exhaustion of administrative remedies prior to seeking judicial review; and 4) permitting the Board and district court to consider the same issue would create a danger of duplicative and conflicting litigation. We acknowledged, however, that in certain circumstances, such as if the remedies available through the statutory scheme of review are inadequate, a district court might have subject matter jurisdiction over a complaint involving the Black Lung Benefits Act. Id. at 341–44.

The issue of preclusion of district court jurisdiction for claims arising under the Black Lung Act arose again in

6

<u>Connors v. Tremont Mining Co.</u>, 835 F.2d 1028 (3d Cir. 1987).  In

<u>Connors</u>, a union Benefit Plan and Trust sought reimbursement from

coal mine operators for medical benefits it had paid to a large

number of black lung claimants.  The Plan argued that the issue

was governed by the terms of the Plan, which was covered by the

Employee Retirement Income Security Act, and therefore it invoked

federal question jurisdiction.  We rejected the Plan's attempt to

assert jurisdiction in the district court, holding once again

that in a case involving disability benefits pursuant to the

Black Lung Benefits Act, federal question jurisdiction is

supplanted by the procedure established by the statute.  <u>Id.</u> at

1030-31.

The reasoning of <u>Compensation Department</u> and <u>Connors</u> is

consistent with the approach taken by the Supreme Court in its

recent decision in <u>Thunder Basin Coal Co. v. Reich</u>, 114 S. Ct.

771 (1994), raising a similar issue in the context of the Federal

Mine Safety and Health Amendments Act of 1977 (Mine Act). Thunder

Basin, a mine operator, sued in district court challenging the

Mine Safety and Health Administration's instruction that it post

the names of the two representatives its employees had chosen

pursuant to the Mine Act to participate in mine inspections,

obtain certain health and safety information and promote health

and safety enforcement.  The mine operator's objection was that

the designated representatives were not its employees, but were

employed by the union.  Although there was a statutory procedure

for administrative review of a citation for violation of such an

order, the mine operator challenged the Administration's

7

interpretation of the Mine Act as permitting such designations by seeking a pre-enforcement injunction from the district court. It argued that designation of union representatives who were not its employees violated the principles of collective-bargaining representation under the National Labor Relations Act and infringed its right to exclude union organizers from its property. It also argued that the Administrator's action violated its Fifth Amendment due process rights by compelling it to choose between violating the Act and enduring the irreparable harm that it would allegedly suffer because of organizing advantages the union would gain as a result of the designation.

A unanimous Supreme Court held that the district court lacked jurisdiction over the pre-enforcement challenge. The Court stated that determination of whether a statute is intended to preclude initial judicial review is made from "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." Thunder Basin, 114 S. Ct. at 776 (citations omitted).

Although the Mine Act is silent on the question of pre-enforcement claims, the Court looked at the detailed structure of the Act, which requires a mine operator to challenge a citation issued within 30 days; provides for review by an administrative law judge (ALJ), and possibly thereafter by the Federal Mine Safety and Health Review Commission (Commission), which must expedite review if necessary; and gives a mine operator the opportunity to challenge an adverse Commission decision in the appropriate court of appeals. There is express provision for

8

district court jurisdiction in only two instances: one empowering the Secretary to seek to enjoin habitual violations of health and safety standards and the other to coerce payment of civil penalties.

The Court concluded that the comprehensive review process provided within the Act signified an intent by Congress that most challenges would be heard within that process. Moreover, there was an emphasis in the legislative history on the need to improve penalties and enforcement measures and streamline the review process. This totality of factors led the Supreme Court to find that Congress intended to preclude district court jurisdiction over ordinary challenges under the Mine Act. Id. at 777-79.

The Secretary argues that the reasoning of Thunder Basin and the Court's treatment of the Mine Act lead ineluctably to the conclusion that the district court lacked jurisdiction over Kreschollek's claim under the Longshore Act. We agree that Thunder Basin bolsters our earlier conclusion in Compensation Department that Congress intended that district court jurisdiction over most claims pertaining to benefits be precluded. Certainly, the review scheme provided in the Longshore Act is comparable in its comprehensiveness to that of the Mine Act. Under section 14(h) of the Longshore Act, the district director must initiate an investigation upon receiving notice from the employer that "payments of compensation have been stopped." 33 U.S.C. § 914(h) (1994). Where the parties' dispute is not resolved by means of an informal conference, see 33 U.S.C.

9

§ 914(h) (1994); 20 C.F.R. § 702.301 (1995), then an ALJ must conduct a full evidentiary hearing, 33 U.S.C. § 919(c), (d) (1994); 20 C.F.R. §§ 702.316, 702.331-.351 (1995). Either party may request review by the Benefits Review Board and thereafter by the appropriate court of appeals. 33 U.S.C. § 921(b), (c) (1994).

The Longshore Act, like the Mine Act construed in Thunder Basin, confers jurisdiction in the district court only in limited circumstances not applicable here. One such circumstance covers the situation when an employer fails to comply with a final compensation order making an award, and authorizes the beneficiary of the award or the district director making the order to apply to the district court for enforcement. 33 U.S.C. § 921(d) (1994). Another such provision allows the Secretary to bring an action in district court to restrain violations of the Act's safety rules and regulations. 33 U.S.C. § 941(e) (1994). As in Thunder Basin, the comprehensive nature of the administrative review scheme and its limited provision for district court jurisdiction make "fairly discernible" a Congressional intent to preclude district court jurisdiction over most claims under the Act. 114 S. Ct. at 776 (quoting Block v. Community Nutrition Inst., 467 U.S. 340, 351 (1984)).

The legislative history of the Longshore Act also supports this reading. Before the Act was amended in 1972, it provided for deputy commissioners to resolve disputed claims by conducting evidentiary hearings and issuing initial decisions, which were reviewable in district court and ultimately in the

10

courts of appeals. See Compensation Dept., 667 F.2d at 341; Kalaris v. Donovan, 697 F.2d 376, 381-82 (D.C. Cir.), cert. denied, 462 U.S. 1119 (1983). Although effort at informal resolution of disputed claims continued to rest with deputy commissioners (renamed as district directors, see 20 C.F.R. §701.301(a)(7) (1995)), the 1972 amendments transferred to ALJs the formal adjudication of claims. The ALJ's decision was made reviewable by the Board to determine from the record developed before the ALJ if the decision was in accordance with law and supported by substantial evidence. Kalaris, 697 F.2d at 382. The Board now performs the identical function that the district courts performed before the 1972 amendments, eliminating the role of the district courts in the claims process. See Compensation Dept., 667 F.2d at 342. Thus, the changes effected by the 1972 amendments further support reading the Act to preclude district court jurisdiction over ordinary challenges.

**B.**

This conclusion does not end our inquiry. We must proceed to consider, as the Court did in Thunder Basin, whether the claim asserted is of the type Congress intended to be reviewed within the Act's statutory structure. See Thunder Basin, 114 S. Ct. at 779. In that connection, the Court noted its own precedent upholding district court jurisdiction over "wholly collateral" claims, "particularly where a finding of preclusion could foreclose all meaningful judicial review." Id. at 779.

11

The Court's own discussion in <u>Thunder Basin</u> of its earlier cases permitting district court jurisdiction over collateral claims serves as a useful textbook exegesis of the situations in which district court jurisdiction is not deemed precluded, and it is useful to quote it in full.  The Court stated:

> This Court previously has upheld district court jurisdiction over claims considered "wholly 'collateral'" to a statute's review provisions and outside the agency's expertise, <u>Heckler v. Ringer</u>, 466 U.S. 602, 618, 104 S. Ct. 2013, 2023, 80 L. Ed. 2d 622 (1984), discussing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), particularly where a finding of preclusion could foreclose all meaningful judicial review.  <u>See</u> <u>Traynor v. Turnage</u>, 485 U.S. 535, 544–545, 108 S. Ct. 1372, 1380, 99 L. Ed. 2d 618 (1988) (statutory prohibition of all judicial review of Veterans Administration benefits determinations did not preclude [district court] jurisdiction over an otherwise unreviewable collateral statutory claim); <u>Bowen v. Michigan Academy of Family Physicians</u>, 476 U.S. 667, 678–680, 106 S. Ct. 2133, 2140–2141, 90 L. Ed. 2d 623 (1986); <u>Johnson v. Robison</u>, 415 U.S. 361, 373–374, 94 S. Ct. 1160, 1168–1169, 39 L. Ed. 2d 389 (1974); <u>Oestereich v. Selective Service Bd.</u>, 393 U.S. 233, 237–238, 89 S. Ct. 414, 416–417, 21 L. Ed. 2d 402 (1968); <u>Leedom v. Kyne</u>, 358 U.S. 184, 190, 79 S. Ct. 180, 184, 3 L. Ed. 2d 210 (1958) (upholding injunction [over otherwise unreviewable bargaining unit determination] of agency action where petitioners had "no other means within their control . . . to protect and enforce that right").

<u>Thunder Basin</u>, 114 S. Ct. at 779.

The cases referred to by the Court in the above discussion provide the legal authority for Kreschollek's argument

12

that there is district court jurisdiction over his claim.  In Mathews v. Eldridge, 424 U.S. 319 (1976), the Court held that the provision of the Social Security Act that required exhaustion of administrative remedies before the denial of benefits could be challenged in district court was not intended to bar federal jurisdiction over a due process challenge to the lack of a pretermination hearing.  The Court explained that that issue was "entirely collateral" to the denial of benefits, and the claimant had made a colorable showing that he could not obtain full relief at a postdeprivation hearing.  Id. at 330.

In McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991), also referred to in Thunder Basin, the Court held that an alien could challenge in district court the constitutionality of Immigration and Naturalization Service (INS) procedures used to process claims of alien farmworkers for "special agricultural worker" status under the Immigration Reform and Control Act, even though the Immigration and Naturalization Act expressly barred judicial review of individual determinations except in deportation and exclusion proceedings.  The McNary Court held that the preclusion of review applied only to denials of individual applications, and not to a constitutional claim alleging a broad "pattern and practice" that was collateral to petitioners' substantive claim for special status.  498 U.S. at 491-94.

The Court in Thunder Basin distinguished this long line of earlier cases from Thunder Basin's situation.  First, it explained that Thunder Basin's challenge to the designation of

13

nonemployees as the miners' representatives required interpretation of the parties' rights and duties under the Mine Act and its regulations, thus implicating subjects within the Commission's expertise. Second, although constitutional challenges were generally considered beyond the jurisdiction of administrative agencies, under the Mine Act the reviewing body was not the agency itself but an independent commission created to review agency decisions, and in any event Thunder Basin would have an opportunity to present its claims to the appropriate court of appeals. Thunder Basin, 114 S. Ct. at 779-80.

Of course, Kreschollek's claim, and the statute and circumstances involved, bear some similarity to those in Thunder Basin. Like the Commission at issue in Thunder Basin, the Benefits Review Board is competent to hear claimants' legal contentions, see 33 U.S.C. § 921(b)(3) (1994) ("The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest . . . with respect to claims" under the Longshore Act). Like the complainant mine operator in Thunder Basin, Kreschollek may seek review in the court of appeals, see 33 U.S.C. § 921(c) (1994) ("Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals . . . ."). And the Longshore Act does contain an express preclusion provision: "Proceedings for suspending, setting aside, or enforcing a compensation order, whether rejecting a claim or making an award, shall not be instituted otherwise than as provided in this section and section 918 of

14

this title." § 921(e). The Act is silent, however, as to whether constitutional challenges to the Act must be brought within the administrative claim process.

Although there have been instances in which administrative agencies have been deemed capable of dealing with constitutional issues in the first instance, see, e.g., Thunder Basin, 114 S. Ct. at 780, "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies," Johnson v. Robison, 415 U.S. 361, 368 (1974) (quoting Oestereich v. Selective Service Bd., 393 U.S. 233, 242 (1968) (Harlan, J., concurring in result). This point was also made in Califano v. Sanders, 430 U.S. 99, 109 (1977), where the Court noted that "[c]onstitutional questions obviously are unsuited to resolution in administrative hearing procedures . . . ." This principle could most aptly be applied if judicial review would not otherwise be available, see, e.g., Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 678-680 (1986), but it is equally pertinent in this case because the result, albeit not necessarily the absence of any judicial review at all, might well be the absence of any effective judicial review.

Kreschollek argues with some persuasiveness that in this respect his case shares more important similarities with the Mathews v. Eldridge line of cases than with Thunder Basin. As in Mathews, Kreschollek's claim that he has a constitutional right to a pretermination hearing is entirely collateral to his claim of entitlement to benefits. Moreover, unlike the situation

15

presented in Thunder Basin, where the mine operator sought to circumvent the administrative procedure and enjoin enforcement proceedings, Kreschollek's attempt to seek a declaration of his right to a pretermination hearing is in no way inimical to the purpose of the Act and its amendments, which is to create an effective process of providing adequate benefits to injured employees, see Schmit v. ITT Fed. Elec. Int'l, 986 F.2d 1103, 1106 (7th Cir. 1993); see also H.R. Rep. No. 1441, 92d Cong., 2d Sess. 3, reprinted in 1972 U.S.C.C.A.N. 4698, 4698-99, 4711.

The critical distinction, however, is that in this case the administrative process is insufficient to provide Kreschollek the full relief to which he may be entitled. In Mathews, the Court noted that "[a] claim to a predeprivation hearing as a matter of constitutional right rests on the proposition that full relief cannot be obtained at a postdeprivation hearing." 424 U.S. at 331. In Thunder Basin, the Court rejected the operator's argument that due process required district court review because it found that "neither compliance with, nor continued violation of, the statute will subject [Thunder Basin] to a serious prehearing deprivation." Thunder Basin, 114 S. Ct. at 781. Kreschollek, on the other hand, is more clearly at risk of irreparable harm due to the lack of a pretermination hearing. Kreschollek's benefits were terminated on October 29, 1992, and he contends he has been unable to return to work due to his disability. App. at 56. Thus he was deprived of all earned income for almost two-and-a-half years from the time that his

16

benefits were terminated until the ALJ issued a decision in March of 1995.

The inadequacy of the administrative review scheme to address the harm at issue – here, the lack of a pretermination hearing – is precisely the sort of situation which we envisioned in Compensation Department would permit a district court to exercise jurisdiction over a claim involving the Act. See Compensation Dept., 667 F.2d at 343. Notably, unlike the Mine Act involved in Thunder Basin, the Longshore and Harbor Workers' Compensation Act does not provide for expedited review of benefits determinations. As in Mathews, Kreschollek "has raised at least a colorable claim that because of his physical condition

17

and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments."  Mathews, 424 U.S. at 331.  It follows that Kreschollek has alleged a sufficiently serious irreparable injury to lead us to conclude that the administrative review process is insufficient to afford him full relief.

Although Kreschollek has presented the same constitutional questions in the administrative proceeding, the danger of conflicting and duplicative litigation over which the Supreme Court expressed concern in Whitney National Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 422 (1965), and which factored into our decision in Compensation Department is minimized in this case.  By addressing only the constitutional claims, the district court decision will have no bearing upon the merits of Kreschollek's claim of entitlement to continuing disability benefits.  Thus, the procedural problems presented by a pending district court claim should not present an insurmountable barrier to the exercise of district court jurisdiction.  We are confident that the district court and the parties can fashion a workable solution should the issue arise. Kreschollek's counsel conceded at oral argument that at some point he may have to make a decision as to his forum.

18

**III.**

For the reasons set forth above, we will reverse the order of dismissal and remand to the district court for proceedings consistent with this opinion.